J-S20030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE MATTER OF THE ADOPTION OF:
A.D.W.

IN THE SUPERIOR COURT OF
PENNSYLVANIA

APPEAL OF: T.B., NATURAL MOTHER

No. 1639 WDA 2015

Appeal from the Decree entered September 14, 2015,
in the Court of Common Pleas of Erie County, Orphans'
Court, at No(s): 26 of 2015

IN THE MATTER OF THE ADOPTION OF:
C.E.W.

IN THE SUPERIOR COURT OF
PENNSYLVANIA

APPEAL OF: T.B., NATURAL MOTHER

No. 1640 WDA 2015

Appeal from the Decree entered September 14, 2015,
in the Court of Common Pleas of Erie County, Orphans'
Court, at No(s): 6 of 2015

BEFORE:  PANELLA, OLSON, and PLATT[*], JJ.

MEMORANDUM BY OLSON, J.:                **FILED APRIL 20, 2016**

T.B. ("Mother") appeals from the decrees entered on September 14, 2015, granting the petition filed by the Erie County Office of Children and Youth ("OCY" or the "Agency") to involuntarily terminate her parental rights to her dependent minor children, A.D.W., a male born in October 2003, and C.E.W., a male born in September 2010 (collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and

---

[*] Retired Senior Judge assigned to the Superior Court.

(b).[1]  Mother's counsel, Attorney Justin D. Panighetti, ("Counsel"), has filed

a petition for leave to withdraw as counsel and a brief pursuant to **Anders v.**

**California**, 386 U.S. 738, 744 (1967).  We affirm, and grant Counsel's

petition to withdraw.

In the **Anders** brief, Counsel set forth the factual background and

procedural history of this appeal, which OCY does not dispute.[2]  We will set

forth the relevant facts and procedure from Counsel's **Anders** Brief.

> The [C]hildren were removed from [Mother] and placed into the temporary protective legal and physical custody of the . . . [Agency] on February 26[], 2014.
>
> The Shelter Care Hearing took place on March 3[], 2014.  At that time, the [trial c]ourt found there was sufficient evidence presented to prove that return of the [C]hildren to the home would not be in the best interest of the [C]hildren.  [Mother] did not appear for the hearing.
>
> A Dependency Petition was filed on March 5, 2014.  The petition alleged the [C]hildren were without proper parental care or control as it pertained to [Mother], in that she had a history with the [A]gency, and a drug addiction which affected her ability to parent the [] [C]hildren.  Further, it was alleged A.D.W. was diagnosed with ADHD and prescribed medication which [Mother] filled but failed to administer to the child.  Lastly, it was alleged [that Mother] had unstable housing and had engaged in domestic violence in the presence of the [] [C]hildren.  The [C]hildren were adjudicated dependent on March 11[], 2014. [Mother] did not appear at that hearing.

---

[1]  On September 14, 2015, the trial court also entered decrees that terminated the parental rights of A.D.W.'s father, D.J.W., and C.E.W.'s father, J.C.W.  Neither individual has filed any appeal in relation to those terminations, nor is either a party to the present appeal.

[2] The trial court has filed letters in regard to each case, stating that in light of Counsel's **Anders** brief, the court will not be submitting any opinion pursuant to Pa.R.A.P. 1925(a).

The Dispositional Hearing took place on April 7[], 2014. [Mother] did appear at that hearing and the [trial c]ourt ordered her to complete inpatient treatment at White Deer Run, be assessed for Erie County Family Dependency Treatment Court, refrain from the use of drugs and/or alcohol and submit to random urinalysis testing. She was also ordered to demonstrate stable mental health, maintain safe and stable housing, obtain employment, attend visits, and engage in parent education classes through the Time Limited Family Reunification Program.

The initial Permanency Hearing took place on August 18, 2014. [Mother] did not appear for that hearing. The [trial c]ourt found minimal compliance in that [Mother] failed to complete treatment at White Deer Run, failed to participate in an assessment for Erie County Family Dependency Treatment Court, failed to refrain from the use of drugs and/or alcohol and failed to submit to random urinalysis testing. She also failed to demonstrate stable mental health and cooperate with recommended services. Further, she failed to obtain and/or maintain safe and stable housing, obtain and/or maintain gainful employment, and failed to actively engage in parent education classes through the Time Limited Family Reunification Program. At that time, a concurrent goal of adoption was added and a [60-day] review was set.

A second permanency hearing was held on October 13, 2014. At that time, [Mother] did appear and the [trial c]ourt found no compliance with the permanency plan and that no progress had been made toward alleviating the circumstances which necessitated the original placement of the [Children]. . . .

On April 14[], 2015, the Agency filed two Petitions for Involuntary Termination of Parental Rights to a Child Under the Age of 18 Years. Therein, the Agency sought to terminate the parental rights of [Mother] to A.D.W. and C.E.W. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b).

On September 14, 2015, the Honorable Robert A. Sambroak presided over a hearing on the aforementioned petitions. [Mother] did not appear. At this hearing, the following evidence/testimony was adduced:

The [trial c]ourt heard the testimony of Sharon Slubowski, ongoing caseworker at [OCY]. She [testified] that when she took the case over she worked with [Mother] to remedy the substance abuse concerns, unstable home conditions, and domestic violence. She [testified] that at the time of the first permanency hearing in August [] 2014, [Mother] had only completed [20] days of the required [30-day] inpatient period before leaving. She had also failed to attend the appointments in which she was to be assessed to [enter] Erie County Drug Treatment Court. Further, she had not attended her urine screens as required. She also denied having a mental health diagnosis despite two inpatient stays in the previous four months and a diagnosis of major depressive disorder. She had failed to obtain housing and employment and had only attended a few sessions with relation to the parenting plan. Ms. Slubowski testified that the last time she saw [Mother] was in August when [Mother] and the natural father screamed at her and stormed out the front door after being told the Agency was suggesting to change the goal to adoption due to failure to comply. They stormed out as the [C]hildren were coming in the back door for a visit. [Mother] then failed to appear for that goal change hearing.

A second permanency hearing was held in October [] 2014. At that time Ms. Slubowski indicated that [Mother] again failed to comply with the treatment plan. Ms. Slubowski testified that nothing had changed from the time of the initial adjudication. In fact, she testified that things had gotten worse as [Mother] had been charged a few more times with [driving under the influence of alcohol] and [possession of a controlled substance], leading her to be incarcerated.

Based on these circumstances, Ms. Slubowski testified that she believed it to be in the best interest of the [C]hildren for [Mother's] parental rights to be involuntarily terminated.

*Anders* Brief at 6-8.

On September 14, 2015, the trial court entered the decrees involuntarily terminating Mother's parental rights to the Children.

On October 14, 2015, Mother timely filed notices of appeal along with statements of Counsel's intention to file an **Anders** brief pursuant to Pa.R.A.P. 1925(c)(4). **See In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992) (adopting the **Anders** procedure to cases involving the involuntary termination of parental rights); **In the Interest of J.T.**, 983 A.2d 771, 772 (Pa. Super. 2009) (applying Pa.R.A.P. 1925(c)(4) to appeals involving the termination of parental rights). On November 4, 2015, this Court, acting *sua sponte*, consolidated the appeals. On December 16, 2015, Counsel filed an **Anders** brief. On December 21, 2015, Counsel filed the petition to withdraw as counsel. In the **Anders** brief, counsel raises the following issues for our review:

> 1. Did the orphans' court commit an abuse of discretion or error of law when it concluded that the Agency established sufficient grounds for termination under 23 Pa.C.S.A. §2511(a)(1)?
>
> 2. Did the orphans' court commit an abuse of discretion or error of law when it concluded that the Agency established sufficient grounds for termination under 23 Pa.C.S.A. §2511(a)(2)?
>
> 3. Did the orphans' court commit an abuse of discretion or error of law when it concluded that the Agency established sufficient grounds for termination under 23 Pa.C.S.A. §2511(a)(5)?
>
> 4. Did the orphans' court commit an abuse of discretion or error of law when it concluded that the Agency established sufficient grounds for termination under 23 Pa.C.S.A. §2511(a)(8)?
>
> 5. Did the orphans' court commit an abuse of discretion or error of law when it concluded that termination of Appellant's parental rights was in the Children's best interests under section (b)?

*Anders* Brief at 5. Mother did not file a *pro se* brief or retain alternate counsel for this appeal.

Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no-merit" letter or *amicus curiae* brief; and
>
> (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).

In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. "After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d at 1237.

With respect to the third requirement of *Anders*, that counsel inform the defendant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Here, Counsel has complied with each of the requirements of *Anders*. Counsel indicates that he conscientiously examined the record and determined that an appeal would be frivolous. Further, Counsel's *Anders* brief comports with the requirements set forth by the Supreme Court of Pennsylvania in *Santiago*. Finally, the record contains a copy of the letter that Counsel sent to Mother, stating that the *Anders* brief was enclosed, advising her of her right to proceed *pro se* or retain alternate counsel and file additional claims, and stating Counsel's intention to seek permission to withdraw. Accordingly, Counsel has complied with the procedural requirements for withdrawing from representation. We will review Mother's claims on appeal regarding the termination of her parental rights.

Mother's sole issue on appeal is whether the Agency has satisfied the statutory grounds for termination of her parental rights under section 2511(a)(1), (2), (5), (8), and (b), with clear and convincing evidence.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (*quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated Mother's parental rights under section 2511(a)(1), (2), (5), (8), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the

conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

This Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). We will focus on subsection 2511(a)(2) and (b).

The Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

> [Section] 2511(a)(2) provides [the] statutory ground[] for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .
>
> [The Supreme Court] has addressed incapacity sufficient for termination under § 2511(a)(2):
>
> > A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 515 A.2d 883, 891 (Pa. 1986), *quoting In re: William L.*, 383 A.2d 1228, 1239 (Pa. 1978).

*In re Adoption of S.P.*, 47 A.3d at 827.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities.

- 11 -

*In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

> The ongoing caseworker, Ms. Slubowski, testified to the following:
>
> when she took the case over she worked with [Mother] to remedy the substance abuse concerns, unstable home conditions, and domestic violence. She indicated that at the time of the first permanency hearing in August of 2014, [Mother] had only completed [20] days of the required [30-]day inpatient period before leaving. She had also failed to attend the appointments in which she was to be assessed to [enter] Erie County Drug Treatment Court. Further, she had not attended her urine screens as required. She also denied having a mental health diagnosis despite two inpatient stays in the previous four months and a diagnosis of major depressive disorder. She had failed to obtain housing and employment and had only attended a few sessions with relation to the parenting plan. Ms. Slubowski testified that the last time she saw [Mother] was in August when [Mother] and the natural father screamed at her and stormed out the front door after being told the Agency was suggesting to change the goal to adoption due to failure to comply. They stormed out as the [C]hildren were coming in the back door for a visit. She then failed to appear for that goal change hearing.
>
> A second permanency hearing was held in October [] 2014. At that time Ms. Slubowski indicated that [Mother] again failed to comply with the treatment plan. Ms. Slubowski testified that nothing had changed from the time of the initial adjudication. In fact, she testified that things had gotten worse as [Mother] had been charged a few more times with [driving under the influence of alcohol] and [possessing a controlled substance], leading her to be incarcerated.
>
> Based on these circumstances, Ms. Slubowski testified that she believed it to be in the best interest of the [C]hildren for [Mother's] parental rights to be involuntarily terminated.

*Anders* Brief at 7-8; OCY's Brief at 2.[3]

The trial court assessed the evidence regarding Mother's repeated incapacity to parent the Children, and her inability to remedy the conditions and causes of her incapacity to parent the Children. *See* N.T., 9/14/15, at 28. As there is competent, clear and convincing evidence in the record that supports the trial court's termination of Mother's parental rights to the Children under subsection (a)(2), we affirm the trial court's decision. *In re Adoption of S.P.*, 47 A.3d at 826-27.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], [the Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

---

[3] As the trial court did not file an opinion, we have relied on the facts as set forth in the *Anders* brief, and incorporated by OCY's brief, as confirmed by our careful review of the record, for ease of disposition of the appeal.

Ms. Slubowski testified that the termination of Mother's parental rights would be in the best interest of the Children, and that she would not anticipate any negative effect on them from the termination. N.T., 9/14/15, at 19. Ms. Slubowski also testified that there was no healthy bond between Mother and the Children, as Mother places blame on the Children, and claims that they are the reason why her visits were not going well. *Id.* at 21-22. She described the visits between Mother and the Children as cold and disturbing, with the Children fighting, and Mother not attempting to stop them. *Id.* at 22. Ms. Slubowski testified that C.E.W. had tubes in his ears and had been kicked out of a day care for aggression problems. *Id.* at 23. She also testified that A.D.W. has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") and Attention Deficit Hyperactivity Disorder ("ADHD"). *Id.* at 23. She stated that A.D.W. is placed with his maternal grandmother, and C.E.W. is placed with his paternal grandmother. *Id.* at 20. Ms. Slubowski testified that both grandmothers have been able to deal with the Children and their needs. *Id.* at 24.

Michael Scott Vicander, the OCY permanency caseworker, testified that A.D.W., who is 11 years old, has special needs, and is involved in family-based trauma focus therapy. N.T., 9/14/15, at 25-26. A.D.W. is working with the crime victim center, and has a blended case manager. *Id.* Mr. Vicander stated that A.D.W. is placed with his maternal grandmother, who is able to meet all of his needs. *Id.* Mr. Vicander testified that A.D.W. has not

seen Mother since Mr. Vicander assumed the case on November 14, 2014, and he has not observed any detrimental effect on A.D.W. from not seeing Mother, nor has he had any indication of an ongoing bond between A.D.W. and Mother. *Id.* at 24, 26.

Mr. Vicander also testified that C.E.W. is placed with his paternal grandmother, in a kinship foster home. *Id.* at 27. Mr. Vicander stated that C.E.W. is a normal four-year-old and attends day care. *Id.* Mr. Vicander testified that C.E.W. is doing exceptionally well in the home, and does not have any special needs. *Id.* Mr. Vicander testified that C.E.W.'s paternal grandmother is meeting all of C.E.W.'s needs. *Id.* Mr. Vicander stated that he had not noticed any negative effect on C.E.W. from being away from Mother, nor had he noticed any evidence of a bond between C.E.W. and Mother. *Id.* at 27-28. Mr. Vicander stated that the termination of Mother's parental rights would be in the best interest of C.E.W. *Id.* at 28. Further, Mr. Vicander testified that he had seen nothing that would indicate that the termination of Mother's parental rights would have a negative effect on either of the Children. *Id.* at 26.

The trial court considered the needs and welfare of the Children, and the lack of a bond between Mother and the Children. *See* N.T., 9/14/15, at 29. There is competent, clear and convincing evidence in the record to support the conclusion that the termination of Mother's parental rights serves the Children's best interests, as Mother cannot meet their needs and

welfare, and their foster homes are currently meeting their needs and welfare. The evidence also supported the determination that there is no bond between the Children and Mother that, if severed, would cause a detrimental effect on them.

As we stated in **In re Z.P.**, 994 A.2d 1108 (Pa. Super. 2010), a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." **Id.** at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of [her] child is converted, upon the failure to fulfill [] her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." **In re B., N.M.**, 856 A.2d 847, 856 (Pa. Super. 2004).

We find that the court's legal conclusions are not the result of an error of law or an abuse of discretion. We, therefore, affirm the trial court's decision with regard to subsection (b). **In re Adoption of S.P.**, 47 A.3d at 826-27.

Accordingly, we affirm the trial court's decrees terminating Mother's parental rights, and we grant Counsel's petition to withdraw as counsel.

Decrees affirmed; petition granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2016